IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WARREN REAL ESTATE HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SINCLAIR CONSTRUCTION GROUP, INC., et al. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. CIV-24-1289-SLP |

**O R D E R**

Before the Court is the Motion for Relief from Order of Default [Doc. No. 12] filed by Defendants Sinclair Construction Group, Inc. and MEGASLAB, Inc. Plaintiff Warren Real Estate Holdings, Inc. filed a Response [Doc. No. 14]. Defendants did not reply, and the time to do so has passed.

**I.     Procedural History**

As set forth in the Complaint, Plaintiff alleges that Defendant Sinclair installed concrete manufactured by Defendant MEGASLAB at Plaintiff's Oklahoma City facility. *See* [Doc. No. 1] ¶ 12. Plaintiff alleges the "concrete products installed by Defendants failed" because of "defective materials and poor workmanship." *Id.* ¶¶ 15–16. Ultimately, Plaintiff hired a different contractor "to remove the concrete installed by Defendants and to install new concrete at the facility." *Id.* ¶ 19.

Plaintiff filed this action on December 10, 2024, asserting four claims for relief: (1) breach of contract, (2) breach of warranty, (3) negligence, and (4) unjust enrichment.[1] Plaintiff served Defendants by certified mail on December 13, 2024, so Defendants' deadline to answer or otherwise respond was January 3, 2025.  *See* [Docs. No. 5, 6]; *see also* Fed. R. Civ. P. 12(a)(1)(A)(i).

Jason Adams is the CEO for Defendants, both of which are located in Marietta, Georgia. [Doc. No. 12-1] ¶¶ 1–2. In his Declaration, Mr. Adams avers that Defendants "reviewed the complaint internally, and promptly forwarded the complaint to [their] insurance carriers for coverage and costs of defense." *Id.* ¶ 6. Defendants also "sought specialized insurance attorneys in Georgia to review the coverage issues and interface with both carriers on providing counsel and costs of defense." *Id.* ¶ 9. Finally, Defendants forwarded the complaint to "a trial attorney . . . tasked with finding counsel licensed in Oklahoma and Texas," the two states where litigation is pending with Plaintiff. *Id.* ¶ 8.

At some point prior to January 13, 2025, Defendants asked Plaintiff for a "7 day extension of time to respond to the . . . [C]omplaint"—a request that Plaintiff did not oppose.[2] [Doc. No. 12-2] at 2; *see also* [Doc. No. 14] at 4. Mr. Adams contacted Plaintiff's counsel by email on January 13 requesting a second extension. Mr. Adams represented that he was "continuing to address the insurance coverage issues under [Defendants']

---

[1] The dispute between the parties has spawned at least three lawsuits. *See* [Doc. No. 12-1] ¶¶ 4, 8; [Doc. No. 12-2] at 3.

[2] Mr. Adams's email claims that the request came from "AIG counsel." [Doc. No. 12-2] at 2. It is not clear who, specifically, made the request, but there is no dispute it was made.

policies, which provide costs of defense and litigation counsel," and that "terrible weather . . . interrupted and shut down everything." [Doc. No. 12-2] at 2.  He further explained that he had "retained counsel in [Georgia] to deal with this ongoing situation," but counsel was "still working through the coverage issues."  *Id.*  Finally, he expressed his "inten[t] to contact the Court this week about the need for an extension of time to respond to the federal action."  *Id.*  No such motion was filed.

About two hours before Mr. Adams sent this email, however, Plaintiff filed an Application for Clerk's Entry of Default [Doc. No. 8].  The Clerk of Court entered default, pursuant to Federal Rule of Civil Procedure 55(a), that same day.  *See* [Doc. No. 9].  Two weeks later, counsel for Defendants entered an appearance in this action.  *See* [Doc. No. 10].  The following day, Plaintiff filed a Motion for Default Judgment [Doc. No. 11] pursuant to Rule 55(b).  Two days after that, Defendants filed the instant Motion asking the Court to (1) set aside the Clerk's entry of default, and (2) extend Defendants' deadline to respond to the Complaint.  *See* [Doc. No. 12] at 3.

II.  **Legal Standard**

"Default judgments are a harsh sanction, and as such they are not favored by courts." *Beverly v. Martin*, No. 1:22-CV-00884-DHU-LF, 2023 WL 4532461, at *2 (D.N.M. July 13, 2023) (quotations omitted).  "The Court may set aside an entry of default for good cause."[3]  Fed. R. Civ. P. 55(c).  In determining whether good cause exists, courts consider

---

[3] In their Motion, Defendants erroneously claim they must establish excusable neglect—a higher standard than the one they must actually satisfy.  *See, e.g.*, [Doc. No. 12] at 2; *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) ("[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the

"(1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense." *Hunt v. Ford Motor Co.*, No. 94-3054, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (unpublished) (citing *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)). The good cause analysis is not overly rigid, however. The Court "need not consider all the factors," and it "may consider other factors." *Id.*

### III.  Analysis

Upon holistic review of the relevant factors and the particular circumstances of this case, the Court concludes the Clerk's Entry of Default [Doc. No. 9] should be set aside. First, Plaintiff urges the Court to deny Defendants' Motion because it "lacks an explanation adequate to show their default was not the result of their own culpable conduct." [Doc. No. 14] at 3. Culpable conduct, for purposes of the good cause analysis, typically means a defendant "has defaulted willfully or has no excuse for the default." *Hunt*, 1995 WL 523646, at *3. Defendants claim their default was "caused by the complexity related to multiple claims made in two states involving the same parties." [Doc. No. 12] at 2. They also cite "[t]he place of business of Defendants, [and] the logistics of coordinating a claim against the insurance carrier, while making the selection of suitable counsel" as reasons for

---

defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." (alteration in original)). Plaintiff notes that Defendants have proffered the wrong standard, but it nevertheless asks the Court to hold Defendants to the more rigorous excusable-neglect standard. *See* [Doc. No. 14] at 2. The Court declines this invitation.

4

their default. *Id.* Finally, Mr. Adams contacted Plaintiff's counsel and communicated his need for additional time to respond to the Complaint.[4] Although he did not ultimately seek appropriate relief from the Court, Defendants have provided an excuse for the default. Accordingly, the first factor weighs in their favor.

As to the second factor, Plaintiff baldly asserts it "has been prejudiced by Defendants['] dilatory litigation conduct," but provides no further elaboration. [Doc. No. 14] at 5. A showing of "[p]rejudice requires more than mere delay or an increase in litigation costs." *Kahler v. Wal-Mart Stores, Inc*, No. 20-CV-01536-WJM-KMT, 2020 WL 7335714, at *4 (D. Colo. Dec. 14, 2020) (quotation omitted). Instead, "Plaintiff must show prejudice in a more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quotation omitted). Plaintiff identifies no such prejudice here, and it is doubtful any exists; Defendants' counsel entered an appearance 14 days after the Clerk entered default and filed the instant Motion three days after that. Accordingly, this factor weighs heavily in Defendants' favor.

Regarding the third factor, Plaintiff contends Defendants have "fail[ed] to identify facts supporting a meritorious defense to [Plaintiff's] claims." [Doc. No. 14] at 5. This analysis considers "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Gaines v. City of Moore*, No. CIV-20-851-D, 2021 WL 3215103, at *3 (W.D. Okla. July 29, 2021) (quoting *Kahler*,

---

[4] Plaintiff argues that because Defendants' response deadline is fixed by Rule 12(a)(1)(A)(i), their "efforts to obtain [Plaintiff's] agreement to extensions to the deadline are meaningless and irrelevant." [Doc. No. 14] at 4. The Court disagrees. Mr. Adams's efforts to extend his deadline, although imperfect, suggest Defendants did not default willfully.

2020 WL 7335714, at *4). Defendants attach several aerial photos of the worksite to their Motion. *See* [Doc. No. 12-3]. As an initial matter, the Court agrees with Plaintiff that the photos, without further context, do little to demonstrate that a meritorious defense exists. But Mr. Adams's sworn declaration provides that "[t]he concrete installed by [Defendants] never impaired the functionality of [Plaintiff's]" facility, and that "[m]any if not most of the material allegations in the Complaint are untrue." [Doc. No. 12-1] ¶¶ 18–19. Because the claims asserted are highly fact-dependent—i.e., they turn on details about the Defendants' workmanship and the condition of the concrete—and the parties have not yet developed these facts through discovery, the Court finds this factor weighs slightly in favor of Defendants. *See Crutcher v. Coleman*, 205 F.R.D. 581, 585 (D. Kan. 2001) ("[D]efendant's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.").

Finally, Plaintiff asks the Court to order Defendants "to reimburse [Plaintiff] the fees incurred in preparing the Application for Entry of Default, the Motion for Default Judgment, and [its] Response." [Doc. No. 14] at 6. While it does not condone Defendants' failure to timely respond to the Complaint, the Court finds an award of fees is not warranted here. Nevertheless, the Court fully expects Defendants to comply with their deadlines moving forward. Relatedly, the Court expects the parties will endeavor to resolve future disputes without Court intervention, whenever possible.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Relief from Order of Default [Doc. No. 12] is GRANTED. The Clerk's Entry of Default [Doc. No. 9] is set aside.

IT IS FURTHER ORDERED that Defendants shall answer or otherwise respond to the Complaint [Doc. No. 1] within 10 days of the date of this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion for Default Judgment [Doc. No. 11] is DENIED as moot.

IT IS SO ORDERED this 10th day of March, 2025.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE